UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>LAMONT L. GLOVER,<br><br>    Defendant. | Case No. 25-cr-30098-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Lamont L. Glover's motion to dismiss the Indictment on the grounds that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied to him in light of the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022) (Doc. 21). The Government has responded to the motion (Docs. 24 & 26). Glover has not replied to the response, although he was given an opportunity to do so.

**I.**  **Background**

On July 15, 2025, the grand jury returned an indictment charging Glover with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and seeking forfeiture of the firearm (a 9 mm pistol) and the ammunition in it (Doc. 1).

In the pending motion, Glover asks the Court to dismiss the Indictment on the grounds that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as it applies to him because the Second Amendment covers his right to possess a firearm, and there is no historical tradition of disarming felons like him, that is, those with felony convictions for vehicular hijacking, aggravated unlawful use of a weapon, and unlawful possession of a firearm and methamphetamine. In support, he points to the Supreme Court's recent decision in *Bruen*.

The Government contends it should prevail at every stage of the *Bruen* inquiry. First, it argues that Glover is not within the category of people the Second Amendment protects because he was a felon and had demonstrated disdain for the law. Second, it argues that, even if the Second Amendment protected Glover, there is a historical tradition of disarming those like him.

**II.     Analysis**

    A.     Second Amendment

The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In the recent years, the Supreme Court has made landmark rulings about the Second Amendment's meaning and application.

    B.     Supreme Court Precedent

        1.     *Heller*

The first of these cases, *District of Columbia v. Heller*, 554 U.S. 570 (2008), was decided after decades without any major Supreme Court decision considering the Second Amendment. *Heller* rejected the understanding that the amendment applied only to arms for militia service.

In *Heller*, the Supreme Court considered a District of Columbia prohibition on, among other things, possessing a handgun in the home. *Id.* at 574-75. It concluded that the Second Amendment right to keep and bear arms is not confined to the context of militia service but instead extends to an individual's right to possess and carry weapons for self-defense in case of confrontation. *Id.* at 595. Nevertheless, it acknowledged that the right is not limitless; the Second Amendment does not "protect the right of citizens to carry arms for *any sort* of confrontation." *Id.* (emphasis in original). Indeed, historically "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at

626 (citing prohibitions on carrying concealed weapons, possession by felons and the mentally ill, carrying in sensitive places, or conditions and qualifications for commercial sales); *accord New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 21 (2022); *McDonald v. City of Chi.*, 561 U.S. 742, 786 (2010). *Heller* concluded that the District of Columbia's ban on handguns—the overwhelming firearm of public choice for self-defense—held and used for self-defense in the home violated the Second Amendment. *Id.* at 628-29, 635.

    2.    *Bruen*[1]

The Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), considered a New York regulation requiring an applicant for a license to carry a firearm in public to have a heightened need for self-protection. The *Bruen* Court started by quickly agreeing that the Second Amendment "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" extended to carrying handguns for self-defense in public, outside the home. *Bruen*, 597 U.S. at 32-33. It found no fault with non-discretionary licensing schemes to exercise the public carry right based on objective criteria but condemned New York's additional requirement that a public carry license applicant demonstrate "proper cause," that is, a "special need for self-protection distinguishable from that of the general community." *Id.* at 12.[2] New York justified the "proper cause" requirement as "substantially related to the achievement of an important governmental interest," preventing handgun violence primarily in urban areas. *Id.* at 17, 27.

In determining that the "proper cause" requirement infringed on public carry applicants'

---

[1] Before *Bruen*, the Supreme Court decided *McDonald v. City of Chi.*, 561 U.S. 742 (2010), which applied the Second Amendment to the states through the Fourteenth Amendment Due Process Clause. That is not at issue in this case.
[2] Restricted licenses were available for non-self-defense uses such as hunting, target-shooting, or employment. *Id.* at 12.

Second Amendment rights, applied to the states under the Fourteenth Amendment, the Supreme Court held that the constitutionality of a firearm regulation depends solely on whether the restriction on conduct covered by the Second Amendment is consistent with "the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19.  There is no "interest-balancing" or "means-end scrutiny" inquiry involved in this determination. *Id.*  When a regulation limits conduct covered by the Second Amendment, the Government "must affirmatively prove" that the regulation is part of the historical tradition, or else the regulation is unconstitutional. *Id.* at 19, 24.  Thus, the two—and only—relevant inquiries are (1) does the Second Amendment's plain text cover the regulated conduct and (2) is the regulation consistent with the country's historical tradition. *Id.* at 17.  If the regulated conduct is covered, it is presumed that the Constitution protects that conduct, and if there is no historical tradition of regulating that conduct, the regulation is unconstitutional. *Id.* at 24.

      As noted above, the *Bruen* Court found that the petitioners—"two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects." *Id.* at 31-32. Accordingly, their carrying firearms in public for self-defense fell within the plain text of the Second Amendment, satisfying the first relevant inquiry. *Id.* 32-33.

      Moving on to the second, the *Bruen* Court concluded that the "proper cause" requirement for receiving a public carry license from New York was not within the nation's historical tradition. *Id.* at 70.  Although "the right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing the intent for which one could carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms," the *Bruen* Court found no "tradition of broadly prohibiting the public carry of commonly used firearms for self-defense," and no "historical tradition limiting public carry only to those law-

4

abiding citizens who demonstrate a special need for self-defense." *Id.* at 38. Therefore, the "proper cause" requirement was unconstitutional. *Id.* at 39.

        3.    <u>*Rahimi*</u>

The latest Supreme Court Second Amendment case is *United States v. Rahimi*, 602 U.S. 680 (2024). There, the Supreme Court considered a challenge to the constitutionality of 18 U.S.C. § 922(g)(8), which forbids possession of a firearm by an individual subject to a domestic violence restraining order that, among other things, finds that he "represents a credible threat to the physical safety" of an intimate partner or child, 18 U.S.C. § 922(g)(8)(C)(i). *Rahimi*, 602 U.S. at 688. The Supreme Court concluded that the statute, as applied, was constitutional since the defendant posed a credible threat to an intimate partner. In so holding, the Supreme Court noted, "Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 690.

*Rahimi* began with *Bruen*'s instruction to consider "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id.* at 692. If a regulation at our nation's founding was adopted to address a particular problem, it is likely that a similar modern law addressing a similar problem is permissible so long as it does not extend beyond the founding era regulation's reach and is at least analogous to the historical precursor. *Id.* The modern court must ask the "why" and "how" of the regulations to determine if they are close enough to pass constitutional muster. *Id.*

*Rahimi* recognized that a particular problem addressed by firearm regulation in founding times was individuals who pose a clear threat of physical violence to another: "When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698. Thus, the disarming of individuals "found by a court to present a threat to

5

others fits neatly within the tradition" of firearm regulation. *Id.* And 28 U.S.C. § 922(g)(8)'s prohibition on possession of firearms by particular individuals—like Rahimi—that a court has determined threaten the physical safety of another is similar enough to those early laws to be constitutional. *Id.* at 698-700, 702.

In so holding, the Supreme Court rejected the notion that Rahimi could be disarmed simply because he was not "responsible" and was not therefore covered by the Second Amendment. *Id*. at 701.

    C.    <u>Seventh Circuit Precedent</u>

The felon in possession statute makes it unlawful for any person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to . . .possess in or affecting commerce, any firearm or ammunition . . . which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).

    1.    *Atkinson*

In *Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023), the Seventh Circuit Court of Appeals offered post-*Bruen* guidance on how to approach challenges like Glover's to 18 U.S.C. § 922(g)(1), although the majority opinion remanded the case rather than conducting that analysis itself. *Id.* at 1022. In that case, Atkinson had been convicted of felony mail fraud, had maintained a clean record in the twenty-four years following that conviction, and wanted to purchase a firearm. *Id.* at 1021-22. The Court of Appeals remanded the case with instructions about what the lower court might consider.[3] Judge Wood, on the other hand, conducted the

---

[3] Those considerations are:
1. Does § 922(g)(1) address a "general societal problem that has persisted since the 18th century?" *Bruen*, 142 S. Ct. at 2131. If this problem existed during a relevant historical period, did earlier generations address it with similar or "materially different means?" *Id.*
2. What does history tell us about disarming those convicted of crimes generally and of felonies in particular? Among other sources, the parties could look to commentary from the Founders, proposals emerging from the states' constitutional ratifying conventions, any actual practices of disarming felons or criminals more

*Bruen* historical analysis in her dissent and concluded the statute was constitutional. *Id.* at 1025.

    2.    <u>*Gay*</u>

After *Atkinson* and only a few weeks before *Rahimi*, the Seventh Circuit Court of Appeals considered the constitutionality of 18 U.S.C. § 922(g)(1) in *United States v. Gay*, 98 F.4th 843 (7th Cir. 2024). It rejected the defendant's contention that the Second Amendment protects felons' rights to possess firearms notwithstanding § 922(g)(1). It found the defendant's facial challenge "hard to square" with the statement in *Heller* that "'longstanding prohibitions on the possession of firearms by felons' are valid," *Gay*, 98 F.4th at 846 (quoting *Heller*, 554 U.S. at 626, 635), and statements in *McDonald* and *Bruen* that approved of this aspect of *Heller*. *Id.*; *compare Atkinson*, 70 F.4th at 1022 (indicating *Bruen*'s historical analysis cannot be sidestepped by reliance on such "observations" by the Supreme Court). The *Gay* court did not conduct the second *Bruen* inquiry regarding historical analogues. In effect, it did what *Atkinson* said the court could not do without even mentioning that case. However, the *Gay* court assumed for the

---

    generally around the time of the Founding, and treatment of felons outside of the gun context (to the extent this treatment is probative of the Founders' views of the Second Amendment). When considering historical regulations and practices, the key question is whether those regulations and practices are comparable in substance to the restriction imposed by § 922(g)(1). To answer the question, the district court and the parties should consider how the breadth, severity, and the underlying rationale of the historical examples stack up against § 922(g)(1).

3. Are there broader historical analogues to § 922(g)(1) during the periods that *Bruen* emphasized, including, but not limited to, laws disarming "dangerous" groups other than felons? The parties should not stop at compiling lists of historical firearms regulations and practices. The proper inquiry, as we have explained, should focus on how the substance of the historical examples compares to § 922(g)(1).
4. If the district court's historical inquiry identifies analogous laws, do those laws supply enough of a historical tradition (as opposed to isolated instances of regulation) to support § 922(g)(1)? On this front, the parties should provide details about the enforcement, impact, or judicial scrutiny of these laws, to the extent possible.
5. If history supports Atkinson's call for individualized assessments or for a distinction between violent and non-violent felonies, how do we define a non-violent or a non-dangerous felony? And what evidence can a court consider in assessing whether a particular felony conviction was violent? For instance, can a court consider the felony conviction itself, the facts of the underlying crime, or sentencing enhancements? *Bruen* shows that these distinctions should also have firm historical support. See 142 S. Ct. at 2132-33 (explaining that the court must assess whether modern and historical regulations are "relevantly similar," including in terms of how and why the regulations burden gun rights).

*Atkinson*, 70 F.4th at 1023-24.

7

purposes of argument that there may be room for an "as-applied" challenge by a "law-abiding, responsible citizen." *Gay*, 98 F.4th at 846.

The Court held that Gay was not such a citizen, having been convicted of twenty-two felonies and having spent twenty-five years in confinement. *Id.* at 847.  Additionally, he was on parole and had agreed, as a condition of parole, not to possess a weapon. *Id.*  The Court of Appeals concluded that, for all of these reasons, Gay was "not a 'law-abiding, responsible' person who has a constitutional right to possess firearms." *Id.*; *compare Range v. Attorney General*, 124 F.4th 218, 229-32 (3d Cir. 2024) (*en banc*) (felon convicted of making a false statement to obtain food stamps covered by Second Amendment; no longstanding historical tradition of regulating possession of firearms by such individuals).

3.  *Prince*

*United States v. Prince*, No. 23-3155, an appeal of a district court decision finding § 922(g)(1) unconstitutional, 700 F. Supp. 3d 663 (N.D. Ill. 2023), was orally argued before the Seventh Circuit Court of Appeals in December 2024.  The decision in that case will likely shed more light on the Second Amendment analysis that applies to this case.

D.  Application to Glover

Glover challenges whether § 922(g)(1) is constitutional on its face and as it applies to him.  In a facial challenge, the defendant "must show that the statute is unconstitutional in all applications." *United States v. Seiwert*, 152 F.4th 854, 860 (7th Cir. 2025).  In an "as-applied" challenge, the defendant need only show that "the statute is unconstitutional in the manner as applied to him and the particular facts of his case." *Id.*

Under *Bruen*'s first text-based inquiry, Glover's alleged conduct is not covered by the plain text of the Second Amendment.  Like Gay, he is not a "law-abiding, responsible" person

8

who is part of "the people" under the Second Amendment. Instead, he is a felon because he has been convicted of multiple felonies, including a drug offense. Despite *Rahimi*'s skepticism of what constitutes a "law-abiding, responsible" person, *Gay* indicates, albeit in *dicta*, that a felon is not, and no Seventh Circuit case has held otherwise since then. *See Seiwert*, 152 F.4th at 862 (assuming without deciding that unlawful drug user is part of "the people" protected by the Second Amendment). The Court is inclined to follow *Gay*'s *dicta*.

Additionally, and perhaps more importantly, under *Bruen*'s second inquiry, Glover's restriction from possessing a firearm is consistent with the nation's historical tradition of firearm regulation. The holding in *Gay*, which is not *dicta* like the "law-abiding, responsible" person statement, found the defendant's argument "hard to square" with the statement in *Heller* that "'longstanding prohibitions on the possession of firearms by felons' are valid," *Gay*, 98 F.4th at 846 (quoting *Heller*, 554 U.S. at 626, 635); *compare Atkinson*, 70 F.4th at 1028 (Wood, J., dissenting) (recognizing passage from *Heller* may not be enough to resolve challenge to § 922(g)(1)). The Court must follow this holding, as it has done before in *United States v. Wooley*, No. 4:23-cr-40028-JPG, Doc. 32, and *United States v. Johnson*, 3:25-cr-30086-JPG, Doc. 22.

Notwithstanding *Gay*, the Court finds the restriction on felons' possessing firearms is not unconstitutional under the *Bruen* analysis. The Government has adequately shown that such a restriction is consistent with "the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19. As Judge Wood noted in her *Atkinson* dissent,[4] "the courts have long recognized that '[t]he preservation of the public peace, and the protection of the people against violence, are constitutional duties of the legislature, and the guarantee of

---

[4] The Court adopts the sources and the reasoning set forth in Judge Wood's dissent.

9

the right to keep and bear arms is to be understood and construed in connection and in harmony with these constitutional duties.'" *Atkinson*, 70 F.4th at 1035 (Wood, J., dissenting) (quoting *Hill v. State*, 53 Ga. 472, 477 (1874)).

Our nation's history "reveals that, since the founding, governments have been understood to have the power to single out categories of persons who will face total disarmament based on the danger they pose to the political community if armed." *Atkinson*, 70 F.4th at 1035 (Wood, J., dissenting). Historically, those categories have included those who were disloyal to the nation, those who could not be relied on to obey the law, and those who had committed serious crimes, as described in the Government's brief. Similar to those categorical disarmament laws aimed at preserving public peace and protecting people from violence, in § 922(g)(1), Congress has deemed felons categorically to be dangerous to the safety of the community and has therefore disarmed them. *Id.* ("Section 922(g)(1) does precisely what statutes have been doing since the mid-18th century. It identifies the group of persons deemed dangerous to the political community—those convicted of the defined felonies—and it makes it unlawful for them to possess a firearm."). Glover falls within that category.

It is not unconstitutional to apply § 922(g)(1) to him, for he actually poses a danger based on the nature of his prior felonies: a vehicular hijacking, aggravated use of a weapon, and drug trafficking. He was sentenced to serve twelve years in prison for the first felony and five years for the third, demonstrating the seriousness of those crimes and reflecting the danger Glover poses to society in light of those crimes. Further, it is well-recognized that felony drug trafficking offenses are closely associated with violence. *See United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011). Glover does not even suggest that his drug trafficking crime was not violent. Thus, even without knowing the details of Glover's prior crime, the Court can safely say

he falls into the category of people for whom there is a history of restricting firearm possession because such people pose a danger of violence to the community.

For all of these reasons, the Court finds that Glover is not covered by the Second Amendment and that, even if he were, he could be disarmed under a categorical bar to firearm possession because his prior crimes show he poses a danger of violence to the community.

### III.    Conclusion

For the foregoing reasons, the Court **DENIES** Glover's motion to dismiss the Indictment (Doc. 21). Should the forthcoming decision in *Prince* reveal this order to be erroneous in any way, the Court would entertain a motion for reconsideration.

The Court further notes that the period from the filing of the motion on October 8, 2025, through the end of the reply period on November 19, 2025, and up to December 19, 2025, the reasonable time the Court had the motion under advisement after the end of the briefing period, is **EXCLUDABLE** pursuant to 18 U.S.C. § 3161(h)(1)(D) and (H). *Henderson v. United States*, 476 U.S. 321, 331 (1986); *United States v. Avila*, 106 F.4th 684, 698 (7th Cir. 2024). Other days before entry of this order may be excludable for other reasons as set forth in the Speedy Trial Act.

**IT IS SO ORDERED.**
**DATED:  December 30, 2025**

                                                                s/ J. Phil Gilbert
                                                                **J. PHIL GILBERT**
                                                                **DISTRICT JUDGE**